

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-851-D

| | |
|---|---|
| OTIS RAGIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Otis Ragin ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for supplemental security income ("SSI") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 25, 30). The motions have been fully briefed.[1] The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 13 Jan. 2016 Text Order). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I. BACKGROUND

A. Case History

Plaintiff filed an application for SSI on 28 July 2011, alleging a disability onset date of 3 December 2010. Transcript of Proceedings ("Tr.") 14. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 14. On 9 May 2013, a

---

[1] Each party filed a memorandum in support of its motion (D.E. 26, 31), and plaintiff filed a reply to the Commissioner's memorandum (D.E. 32).

hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 30-55. In a written decision dated 30 May 2013, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 14-24. Plaintiff timely requested review by the Appeals Council. Tr. 7-10. On 9 September 2014, the Appeals Council admitted additional evidence, namely, the report on a psychological evaluation of plaintiff performed by Walter Sellers, M.A., H.S.P.-P.A. (*i.e.*, health services provider psychological associate) on 2 May 2011 (Tr. 511-15), but denied the request for review. (Tr. 1-6). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 24 November 2014, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Am. IFP Mot. (D.E. 4); Order Allowing Am. IFP Mot. (D.E. 5); Compl. (D.E. 6)).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(v).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a

3

medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. ALJ's Findings

Plaintiff was 43 years old on the date he filed his application for SSI and 45 years old on the date of the administrative hearing. *See* Tr. 22 ¶ 6. The ALJ found that he has a limited education. Tr. 22 ¶ 7 ("The claimant testified [*see* Tr. 37-38] that he was in special education throughout school and graduated with a high school 'certificate' rather than a high school diploma."); *see also* 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education). The ALJ further found that plaintiff had past relevant work as a material handler. Tr. 22 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of his application. Tr. 16 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: cervical spondylosis, degenerative disc disease of the lumbar spine, plantar fasciitis, peripheral neuropathy, borderline intellectual functioning, and functional illiteracy. Tr. 16 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings. Tr. 17 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day—subject to various limitations. Tr. 19 ¶ 4; *see* 20 C.F.R. § 416.967(b).[2] The limitations are that:

---

[2] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 14 Apr. 2016). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

4

> he can never climb ladders, ropes, and scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he should avoid exposure to extreme cold, heat, and vibration; he is limited to simple, repetitive, routine tasks, which will need to be demonstrated and with no reliance on reading to learn a task.

Tr. 19 ¶ 4.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work as a material handler. Tr. 22 ¶ 5. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of laundry folder, housekeeper, and small parts assembler. Tr. 22-23 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 23 ¶ 10.

### D.    Standard of Review

Under 42 U.S.C. § 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff asserts that the ALJ's decision should be reversed and SSI benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ erroneously determined that he does not meet Listing 12.05C for mental retardation and failed to consider, adequately discuss, or allocate appropriate weight to a decision of the North Carolina Department of Health and Human Services ("NCDHHS") that plaintiff qualified for Medicaid disability benefits (Tr. 209-11). Each ground is addressed in turn below.

## III. ALJ'S DETERMINATION ON LISTING 12.05C

### A. Applicable Legal Principles

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of

his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

To satisfy Listing 12.05C,[3] a claimant must meet three requirements. *See Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). One, he must satisfy the introductory diagnostic description for mental retardation. *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning may be defined by the intelligence quotient ("IQ") obtained using one or more of the standardized, individually administered intelligence tests. *See* Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed. text rev. 2000) ("DSM-IV-TR").[4]

---

[3] Listing 12.05 reads in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C (effective 29 Apr. 2013 to 2 Sept. 2013). Although subsequent to issuance of the ALJ's decision the term "intellectual disability" was substituted for the term "mental retardation" in the Regulations and Listings, *see* 78 Fed. Reg. 46,499-01, 2013 WL 3936340 (Soc. Sec. Admin. 1 Aug. 2013), the court uses herein the terminology in the Regulations and Listings prior to this amendment in the interest of consistency with the record.

[4] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we [*i.e.*, the Social Security Administration] use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, 2002 WL 661740, at *20022 (Soc. Sec. Admin. 24 Apr. 2002). The court notes that the current version of the DSM, the fifth edition ("DSM-5"), that was issued in May 2013 about two weeks before the ALJ's decision, contains different diagnostic criteria for mental retardation, which it terms "intellectual disability," from those in the DSM-IV. *Compare* DSM-5 at 33 *with* DSM-IV-TR 49. However, to date, corresponding changes have not been made to the diagnostic description of Listing 12.05 or the severity requirements of Listing 12.05C. Moreover, the Social

Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV-TR 42. Areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002); reciting areas of adaptive functioning listed in DSM-IV-TR 49). By specifying "deficit*s*" in adaptive functioning, the diagnostic definition requires that there be at least two. Listing 12.05 (emphasis added); *see Hightower v. Colvin*, Civ. Act. No. 1:14-cv-02761-RBH, 2015 WL 5008713, at *7 (D.S.C. 20 Aug. 2015). This requirement is consistent with the definition of mental retardation in the DSM-IV-TR, which requires deficits or impairments in "at least two" of the foregoing areas. DSM-IV-TR 49.

In addition to the diagnostic description, a claimant must satisfy the two requirements relating to the severity of the mental retardation. Specifically, a claimant must demonstrate both a "valid verbal, performance, or full scale IQ of 60 through 70" (*i.e.*, "the IQ requirement") and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" (*i.e.*, "the additional impairment requirement"). Listing 12.05C.

---

Security Administration has previously explained that the Listing 12.05 diagnostic definition of mental retardation was based on not only the American Psychiatric Association's definition in the DSM-IV, but also on the definitions used by three other leading professional organizations and that it does not "seek to endorse the methodology of one professional organization over another." *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018-01, 2002 WL 661740, at 20022 (Soc. Sec. Admin. 24 Apr. 2002). For this reason, as well as the fact that the evidentiary record in this case was developed while the DSM-IV-TR was in effect, the court concludes that it remains appropriate to reference the diagnostic criteria in the DSM-IV-TR in applying Listing 12.05C. *See Hightower v. Comm'r of Soc. Sec. Admin.*, No. 1:14-2761-RBH-SVH, 2015 WL 5008668, at *17 (D.S.C. 12 June 2015) ("Listing 12.05 was not updated to reflect the changes present in DSM-5, which calls into question the general applicability of DSM-5 to evaluation of intellectual disability under the Listing."), *rep. & recomm. adopted by* 2015 WL 5008713, at *8 (20 Aug. 2015).

9

Case 5:14-cv-00851-D   Document 34   Filed 04/14/16   Page 9 of 19

## B. Analysis

In his decision, the ALJ accurately recites the diagnostic description of mental retardation in Listing 12.05:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

Tr. 17 ¶ 3. He did not make any explicit finding about whether plaintiff satisfied the diagnostic description.

He went on to address the severity requirements in paragraph C:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. (Exhibit 6F4).

Tr. 18 ¶ 3.[5] On its face, this determination on the paragraph C requirements is ambiguous. It could signify that neither the IQ requirement nor the additional impairment requirement is met, or that only one, but not both, of the requirements is met.

It is clear that the additional impairment requirement is met. Additional impairments, beyond the intellectual impairment, that are found to be severe within the meaning of the Regulations satisfy this prong of Listing 12.05C. *See Reynolds v. Colvin*, No. 6:13-CV-22604, 2014 WL 4852242, at *16 (S.D.W. Va. 19 Aug. 2014), *rep. & recomm. adopted by* 2014 WL 4852250, at *6 (29 Sept. 2014) ("[A]n additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as 'the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an

---

[5] The court deems the ALJ's use of the term "met" here to encompass "medically equaled" in light of his explicit determination that none of plaintiff's impairments meet or medically equal any Listings. *See* Tr. 17 ¶ 3. The deficiencies found by the court with respect to the ALJ's ruling on Listing 12.05C apply under both the "meet" and "medically equal" standards. On remand, the Commissioner should expressly address the issue of plaintiff's satisfaction of Listing 12.05C under both standards.

10

individual's physical or mental ability to do basic work activities.'" (quoting *Luckey v. United States Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989))). As noted, the ALJ found plaintiff to have several severe impairments in addition to borderline intellectual functioning. *See* Tr. 16 ¶ 2. The ALJ's finding that plaintiff was unable to return to his past relevant work also satisfies the additional impairment requirement. Tr. 22 ¶ 5; *see Flowers v. United States Dep't of Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) ("[I]f a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05C."). Thus, as a matter of law, plaintiff meets the additional impairment requirement of Listing 12.05C. To the extent that the ALJ found that plaintiff did not meet this requirement, he erred.

As to the IQ requirement, the record before the ALJ did not contain a verbal, performance, or full scale IQ of 60 through 70. The only IQ results in the record at that point were set out in the report by psychologist Eunice Ngumba-Gatabaki, Ph.D. and licensed psychological associate Anya Odim, M.A. on their 29 January 2011 consultative psychological evaluation of plaintiff (Tr. 281-85). The results they obtained for plaintiff on the Weschler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") were a verbal IQ of 72 and a full scale IQ of 79. Tr. 283; *see also* Tr. 18 ¶ 3 (ALJ's recitation of these scores). Although the report did not list a performance score for plaintiff, it did provide perceptual reasoning, working memory, and processing speed IQ scores of 94, 80, 86, respectively. Tr. 283; *see also* Tr. 18 ¶ 3 (ALJ's recitation of these scores). Thus, to the extent that the ALJ's determination on Listing 12.05C found that plaintiff did not meet the IQ requirement, the determination was proper on the record at the time.

The issue before the court is, however, not the propriety of the ALJ's decision on the record before him, but on the record as supplemented by the Appeals Council. The report of psychological associate Sellers that the Appeals Council added to the record contains an IQ score within the 60 through 70 range specified by Listing 12.05C—namely, a verbal IQ score of 66 on the WAIS-IV. Tr. 512. The presence of this score in the record as supplemented does not automatically signify that plaintiff meets the IQ requirement. "An ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock*, 667 F.3d at 474. More particularly, an ALJ may "reject [IQ] scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average [IQ]." *Maybank v. Astrue*, No. C/A 4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. 31 Aug. 2009); *see also Powell v. Barnhart*, No. 6:04–CV–63, 2005 WL 1926613, at *4 (W.D. Va. 9 Aug. 2005) (holding that if an IQ score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation").

The ALJ, of course, made no findings regarding the validity of this score because it was never before him. The Appeals Council also made no finding on the validity of the score. Instead, it stated simply:

> We considered records from Walter Sellers, MA, HSP-PA, dated May 2, 2011 (5 pages). We considered whether the Administrative Law Judge's actions, findings, or conclusion is contrary to the weight of the evidence of record.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. 2. There accordingly is no explanation in the record as to whether or not the IQ requirement is met by the verbal IQ score in the psychological associate Sellers' report.

The court is aware that the ALJ noted that "the claimant appears to be functioning at a higher level than that suggested by his test scores." Tr. 21 ¶ 4. The ALJ made this observation, though, in the absence of the verbal IQ score from psychological associate Sellers as well as his associated findings regarding the deficits in plaintiff's verbal and other intellectual abilities. Moreover, the ALJ himself found plaintiff to be functionally illiterate, a finding which arguably tends to substantiate the validity of the verbal IQ score in psychological associate Sellers' report.

In the absence of a determination and accompanying explanation by the Commissioner on whether or not plaintiff meets the IQ requirement on the record as supplemented, including specifically whether the verbal IQ score in the report of psychological associate Sellers meets the IQ requirement, the Commissioner has failed to provide "'an accurate and logical bridge from the evidence to [her] conclusions.'" *Mebane v. Colvin*, No. 2:13–CV–43–FL, 2014 WL 3510208, at *7 (E.D.N.C. 15 July 2014) (quoting *Nelson v. Astrue*, No. 1:09CV117, 2012 WL 373364, at *7 (M.D.N.C. 3 Feb. 2012), *rep. & recomm. adopted by* J. (9 Mar. 2012)). As a result, the court cannot determine whether the Commissioner's determination on Listing 12.05C is supported by substantial evidence. Remand is accordingly required. *Id.*

A similar deficiency characterizes the ALJ's determination regarding the remaining requirement under Listing 12.05C, the diagnostic description. As noted, it requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05C. As also noted, the ALJ made no explicit finding on whether or not plaintiff satisfied this description.

Nonetheless, the determination by the ALJ that plaintiff has borderline intellectual functioning establishes that plaintiff has significantly subaverage general intellectual functioning. Its manifestation prior to age 22 is supported by Fourth Circuit precedent that IQ levels are presumed constant, absent contrary evidence. *See Luckey*, 890 F.2d at 668. The presence of the functional illiteracy despite plaintiff's completion of high school and his enrollment in special education classes provide further support for manifestation of the intellectual deficiency prior to age 22. *See Whites v. Colvin*, No. 8:13-cv-00396-DCN, 2014 WL 4668656, at *11 (D.S.C.) (functional illiteracy) (citing *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988)), *rep. & recomm. adopted by* 2014 WL 4668656, at *1 (16 Sept. 2014); *Watson v. Astrue*, Civ. Act. No. CBD–11–2491, 2013 WL 136425, at *7 (D. Md. 9 Jan. 2013) (enrollment in special education classes).

There is also support for plaintiff's satisfaction of the remaining element of the diagnostic description, namely, deficits in adaptive functioning prior to age 22. Plaintiff's functional illiteracy as found by the ALJ alone constitutes such a deficit. *See id.* (citing *Davis v. Astrue*, No. 2:07-1621, 2008 WL 1826493, at *4 (D.S.C. 23 Apr. 2008) (citing DSM-IV-TR 40)). That there may be one other deficit, which is all that the diagnostic description requires, is supported by the ALJ's determination that plaintiff has moderate difficulties in concentration, persistence, or pace. Tr. 18 ¶ 3; *see also* Tr. 79 (determination by nonexamining state agency consulting psychologist that plaintiff has moderate difficulties in these areas). Difficulties in these areas are relevant to adaptive functioning under Listing 12.05C. *See Hightower*, 2015 WL 5008713, at *7. Indeed, a finding that a claimant has such difficulties has been held to be facially inconsistent with a finding that the claimant has no deficits in adaptive functioning under Listing 12.05C and to require remand if the apparent inconsistency is not squarely resolved. *See, e.g., Mebane*, 2014

WL 3510208, at *6-7; *Rothrock v. Colvin*, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. 23 Mar. 2016) (recommendation by mag. judge that case be remanded in part on grounds that ALJ's finding that claimant had moderate difficulties in maintaining social functioning and concentration, persistence, or pace was inconsistent with his finding that claimant had no significant deficits in adaptive functioning under Listing 12.05C).

Further evidence that plaintiff has additional deficits in adaptive functioning is found in the report of Dr. Ngumba-Gatabaki and psychological associate Odim. They state the following with respect to the scores on an adaptive behavior scale they obtained for plaintiff using his mother as the respondent:

> These indicate an adaptive functioning that ranks in the less than 1 percentile and suggest that his current overall adaptive behavior skills are low for his age. His communications skills are Low, while his socialization[] skills and his daily living skills are also rated as Low. These ratings are fairly consistent with the current estimates of his current intellectual functioning [at the borderline level].

Tr. 284.

There is, of course, evidence tending to minimize plaintiff's deficits in adaptive functioning and corresponding findings by the ALJ. For example, he found that plaintiff has mild restrictions in activities of daily living and mild difficulties in social functioning. *See* Tr. 18 ¶ 3. Plaintiff's work history may also tend to negate the presence of deficits in adaptive functioning satisfying the diagnostic description of Listing 12.05C, but not necessarily so because this listing contemplates the circumstance in which a claimant with an intellectual impairment would be able to work but for one or more additional impairments. *See Mebane*, 2014 WL 3510208, at *6-7 (quoting *Radford v. Astrue*, No. 5:08–CV–421–FL, 2009 WL 1675958, at *6 (E.D.N.C. 10 June 2009)). In any event, it is not the court's job to reweigh such evidence.

The court concludes that the ALJ's failure to clearly express the determination, if any, he made regarding plaintiff's satisfaction of the diagnostic description in Listing 12.05C precludes the court from determining whether his determination that plaintiff does not meet that listing is supported by substantial evidence. Remand is accordingly required on this ground, independent of the similar deficiency regarding the IQ requirement of Listing 12.05C previously discussed. *See Mebane*, 2014 WL 3510208, at *7.

## IV. ALJ'S ASSESSMENT OF THE NCDHHS'S MEDICAID DISABILITY DECISION

### A. Applicable Legal Principles

Under 20 C.F.R. § 416.904, the Social Security Administration is not bound by a decision by any other governmental or nongovernmental agency about whether a claimant is disabled. But Social Security Ruling 06-03p requires that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (9 Aug. 2006). The ruling explains that "[t]hese decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.* at *7. "Decisions by other agencies as to the disability status of a Social Security applicant are considered so probative that the ALJ is required to examine them in determining an applicant's eligibility for benefits." *Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *4 (E.D.N.C. 5 Nov. 2010) (remanding the case for consideration of a state Medicaid decision). Furthermore, the ALJ should explain the weight given the disability decision by the other agency. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *7 ("[T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . . ."); *see also Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL

1803619, at *10 (E.D.N.C. 21 Apr. 2008) (remanding for further explanation where the ALJ noted the ruling that plaintiff was eligible for Medicaid assistance but gave it no weight on the sole ground that another agency decision is not binding); *Owens v. Barnhart*, 444 F. Supp. 2d 485, 492 (D.S.C. 2006) (holding that an ALJ should be "required to provide sufficient articulation of his reasons for [rejecting another agency's disability determination] to allow for a meaningful review by the courts").

### B. Analysis

On 30 June 2011, the NCDHHS issued a decision finding that, effective November 2010, plaintiff qualified for Medicaid disability benefits. Tr. 210 ¶ 5. It based its decision on the grounds that plaintiff met the criteria of Listing 12.05C. Tr. 210 ¶ 4. Among its specific findings, the NCDHHS found that plaintiff had the severe impairments of a lifelong learning disability and borderline intellectual functioning. Tr. 210 & ¶ 2. It considered the report of psychological associate Sellers—which, again, the ALJ did not have before him—finding:

> Psychological testing by Walter Sellers, HSP-PA, dated May 2, 2011, confirm[s] his low intellect and that he is functionally illiterate. This may impact his ability to understand what is read and heard. Verbal skills tended to be poor.

Tr. 210.

> The ALJ gave the NCDHHS's decision "little weight." Tr. 22 ¶ 4. He explained:

> The undersigned has given little weight to the opinion of the North Carolina Department of Health and Human Services, which found the claimant to be disabled based on listing 12.05 as referenced in a brief written by the claimant's representative. (Exhibit 13E). The issue of disability is ultimately reserved for the commissioner. SSR 06-3p. Consequently, we are not bound by disability decisions by other government and nongovernment agencies, which may apply other rules and standards for determining disability.

Tr. 22 ¶ 4.

17

As the foregoing authorities indicate, the ALJ's justification that the decisions of other agencies are not binding, standing alone, was an insufficient basis on which to reject the NCDHHS's decision. *See, e.g., Bridgeman*, 2008 WL 1803619, at *10. The ALJ's further justification that other agencies may apply other rules and standards for determining disability was inapposite. As the ALJ's decision itself acknowledges, by noting the NCDHHS's finding that plaintiff was disabled under Listing 12.05C, and as the NCDHHS's decision states, the NCDHHS's decision was based on the same regulations applicable to plaintiff's SSI application. Tr. 22 ¶ 4; 210 ("In order to be eligible for Aid to the Disabled-Medical Assistance, Appellant must be found disabled as defined by federal law set forth in 20 CFR 404 and 20 CFR 416, including Appendices 1 and 2.").

If notwithstanding these flawed findings the ALJ's decision provided a proper explanation of why plaintiff did not meet Listing 12.05C on the record as supplemented, these deficiencies could conceivably be deemed harmless. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7 (M.D.N.C. 14 Aug. 2013). As discussed, however, the ALJ's decision does not provide such an explanation. Nor, of course, is there any discussion of the report by psychological associate Sellers, which underlies, in part, the NCDHHS's decision.

The lack of an adequate explanation for the ALJ's attribution of little weight to the NCDHHS's decision based on the supplemental record precludes the court from determining whether the ALJ's assessment of the NCDHHS's decision is supported by substantial evidence. This deficiency therefore provides an independent ground requiring remand.

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 25) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 30) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 28 April 2016 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This 14th day of April 2016.

James E. Gates
United States Magistrate Judge